UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,             No. 23-cr-20676

-vs-                               Hon. Thomas L. Ludington

D-1  Jeffrey Bartlett,
D-2  Andrew Semenchuk,
D-3  Adam Ball,
D-4  Brian Bartlett, and
D-5  Anthony Thelen

                Defendants.

_____/

### Government's Motion *In Limine* to Bar Irrelevant and Misleading Evidence

Defendants should be barred from eliciting testimony, introducing other evidence, or making arguments relating to the November 2022 civil settlement between Surveying Solutions, Inc. (SSI) and the Michigan Department of Transportation (MDOT). Testimony, evidence, or argument concerning a civil settlement of disputes between parties not charged in the Second Superseding Indictment, relating to unspecified conduct, and covering a different time-frame would be irrelevant, confuse the issues, and mislead the jury. Fed. R. Evid. 403.

Such evidence should therefore be excluded. Defendants do not concur

with this motion.

## I.     Background

Jeffrey Bartlett, Andrew Semenchuk, and Adam Ball were

indicted on charges of conspiracy to commit wire fraud, conspiracy to

defraud the United States, and 13 counts of wire fraud involving SSI, a

company awarded highway surveying and engineering contracts in

Michigan. (R.1: Indictment, PageID.1–22). A superseding indictment

charged Brian Bartlett with the same crimes (R.37: Superseding

Indictment, PageID.101–23), and Anthony Thelen was later indicted as

well. (R.132: Second Superseding Indictment, PageID.1508–34).

### A.     The defendants are indicted on multiple conspiracy and wire fraud charges.

The five defendants "are alleged to have defrauded the United

States government throughout a nearly decade-long conspiracy." (R.72:

Opinion and Order, PageID.327). The starting point was a "secret

agreement" that the five defendants signed in 2011 under which they

all agreed that, regardless of what corporate records reflected, they

would each own an equal 20% share of the net revenue of the "SSI

Group." (*Id.*). At various times throughout the charged conspiracy and scheme to defraud, five corporate entities were included in SSI Group, including SSI—all owned and controlled by a combination of the conspirators. (*Id.*). SSI derived most of its revenue through construction contracts with the Michigan Department of Transportation (MDOT), which were funded by the United States Department of Transportation (USDOT). (*Id.*).

After signing the secret agreement and through July 2019, the defendants made numerous material misrepresentations and omissions concerning SSI's expenses, ownership, and relationships with the other entities—all as part of a scheme to artificially inflate SSI's overhead costs and, in turn, the profits that each defendant would receive when MDOT reimbursed SSI. (*Id.*, 327–28).

Part of the fraud scheme involved securing a Disadvantaged Business Enterprise (DBE) preference that required the disadvantaged owner—here, Semenchuk, an Asian-Pacific Islander—to own at least 51% of the business, to actually control the business by exerting ultimate managerial control, and to be paid more than other owners or employees. (R.37: Superseding Indictment, 103–04). To carry out that

scheme, Semenchuk—who did not control the business—falsely claimed

to be the 51% owner of SSI. (*Id.*, 106–07). Instead, the five conspirators

agreed that they would own equal 20% shares "[r]egardless of how the

Article of Incorporation, Stock Ownership, By Laws, etc. are

written/retained." (*Id.*, 107–08). To carry out that scheme, the

defendants, through SSI, falsely certified to MDOT that Semenchuk

owned and controlled SSI. (*Id.*, 108–09).

The other member-companies of the SSI Group—2SI, 3SI, Geo

Precision Services, and Southfield IT—were owned by the defendants,

but they falsely told MDOT they did not own or control these

companies. (*Id.*, 111). MDOT paid SSI based on false or inflated invoices

that resulted in the reimbursement by MDOT of fraudulent overhead

costs. (*Id.*, 110–13). And the fraudulently calculated overhead increased

the amount of the fixed 11 percent profit margin that was a part of

these highway contracts. (*Id.*, 103, 111).

To carry out this scheme and equalize their profits, at the end of

each calendar year the defendants calculated the income received by the

SSI Group companies, and then—using bonuses to themselves and their

wives as well as fictitious loans that were never intended to be repaid—

made sure that each of the conspirators received equal 20% shares as provided by their secret agreement. (*Id.*, 113–15).

## B. Irrelevant and Misleading Evidence

Although the defendants have not articulated any defense to the charges, over the course of post-indictment litigation and discussions, defense attorneys have alluded to their opinion that the civil settlement (Exhibit A)[1] SSI reached with MDOT somehow mitigates, settles, or even vitiates their criminal liability. In addition to the settlement itself, defense counsel have claimed that during those settlement negotiations MDOT officials said they did not think the defendants should have been indicted and that they were very satisfied with the work SSI had done and continued to do on MDOT projects. None of this is relevant or admissible.

## C.  The Settlement Agreement

In August 2019, after search warrants were executed on SSI's offices, MDOT continued to do business with SSI, but placed it in "safe harbor" status which substantially reduced the profit SSI could make

---

[1] When the government files this motion it will simultaneously file a motion to seal Exhibit A.

on MDOT contracts. On November 28-29, 2022, SSI and MDOT

executed a settlement agreement to resolve issues with MDOT and to

lift the safe harbor restrictions.

None of the charged defendants are parties to the settlement

agreement. Defendant Jeff Bartlett signed the agreement as a principal

of SSI, not in his personal capacity. (Exhibit A, page 7). The time

covered by the agreement is August 1, 2016, through July 31, 2022, and

purports to address "all issues related to SSI's billings to MDOT…"

(Exhibit A, paragraph 11).

Because none of the individual defendants were parties to the

agreement, and it concerns a resolution of a civil contractual dispute—

not criminal allegations—between SSI and MDOT, the settlement

agreement and any related evidence are wholly irrelevant and

misleading and should be barred.

## II. Law and Argument

### A. Relevance

The test for relevance is whether proffered evidence has any

tendency to make a fact more or less probable than it would be without

the evidence; and the fact is of consequence in determining the action.

Fed. R. Evid. 401(a)(b). "Irrelevant evidence is not admissible." Fed. R. Evid. 402. And Rule 403 further provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

In a criminal case, a fact is "of consequence" if it makes it more or less likely that the defendant committed the charged conduct." *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020). Although the defendants bear the burden of establishing relevance as the proponent of the evidence, the government anticipates the defendants will argue that SSI's settlement agreement with MDOT is relevant to their intent and the materiality of the statements they made to MDOT and USDOT. Those claims lack merit.

That a fraud victim might believe that criminal charges should not have been filed is irrelevant to any fact in consequence. Instead, it invites jury nullification, which is suggesting to a jury to acquit a defendant even though he is guilty. *United States v. Krzyske*, 836 F.2d 1013, 1021 (6th Cir. 1988). It "undermine[s] the impartial

determination of justice based on law." *Id.* Essentially, the nullification

argument here is that if the victim does not think this is a big deal,

why should the jury convict even if the evidence establishes guilt?

Similarly, the fact that MDOT may have been satisfied with the actual

work provided by SSI is irrelevant. It does not address the scope of the

alleged fraud against MDOT/USDOT in this case—namely, that SSI

charged MDOT for work and services it did not provide (i.e., labor by

the defendants' spouses and significant others and information

technology services). And, it does not make it any more or less likely

that the defendants engaged in a conspiracy to make material

misrepresentations with intent to defraud. Such evidence fails to meet

the basic test of relevance.

   "[I]rrelevant evidence is never admissible." *United States v.*

*Jenkins*, No. 1:14-cr-72, 2014 WL 12676280, *4 (W.D. Mich. Aug. 20,

2014). In *Jenkins*, the defendants were charged with conspiracy to

manufacture marijuana and sought to introduce evidence that they

believed their behavior was lawful and in compliance with Michigan's

medical-marijuana law. Rejecting that effort, the district court granted

the government's motion in limine concluding that "the only reason to

[do so] is to encourage jury nullification or establish a defense that was not valid." *Id*. The court not only excluded the evidence as irrelevant, it barred arguments that "distract from the purpose of a criminal trial" and ordered that "[a]rguments that are intended to cause jury nullification may not be presented at trial." *Id*. at *6. The Sixth Circuit affirmed the subsequent convictions. *See United States v. Walsh*, 654 F. App'x 689 (6th Cir. 2016). In doing so, the Court agreed with the district court that compliance with Michigan law was irrelevant to defendant's guilt or innocence under federal law. *Id*. at 696. And, the Court further held that excluding such evidence was appropriate. *Id*.

The same observation can be made here: MDOT's claimed satisfaction with SSI's work—or not—is irrelevant to whether the defendants made materially false statements under the wire fraud and criminal conspiracy statutes. *See also United States v. Daniel*, 329 F.3d 480, 486 (6th Cir. 2003) (actual reliance by a victim is not an element of wire fraud). And this Court has the authority to control the proceedings to prevent the introduction of irrelevant evidence and preclude irrelevant arguments that invite jury nullification. *See* Fed. R. Evid. 611(a); *Jenkins*, 2014 WL 12676280, *6 ("Rather than allow irrelevant

arguments to distract from the purpose of the criminal trial and offer a curative instruction as a remedy, any irrelevant arguments will be excluded.").

## B. Intent

There is no basis to allow the defendants to introduce the SSI/MDOT settlement and related evidence to show what MDOT's willingness to continue working with SSI, MDOT's claimed satisfaction with SSI's work, and the fact that SSI did the work, somehow mitigates against their intent to defraud MDOT and USDOT. None of that is relevant to any fact-in-consequence in this case. As one court has observed, "the proof of [the defendants'] intent to defraud lies in the substance of their misrepresentations, not in the cumulative impact of those misrepresentations on all of their customers." *United States v. Elliott*, 62 F.3d 1304, 1308 (11th Cir. 1995). Thus, it is appropriate to exclude such evidence as irrelevant. *Id.* at 1308–09.

To the contrary, such evidence would be an improper effort to shift the focus from the defendants' intent to defraud to what MDOT thinks about SSI and the defendants' alleged misconduct. And the Sixth Circuit has affirmed efforts to preclude such evidence. *See United*

*States v. Bravata*, 636 F. App'x 277, 286–87 (6th Cir. 2016). In *Bravata*,

a wire fraud prosecution involving lies to investors, the district court

excluded testimony of satisfied investors proffered to refute the

defendant's intent to defraud. The Sixth Circuit affirmed the exclusion

of that kind of testimony because doing so properly "focused the jury on

[the defendant's] intent," rather than on how victims felt. *Id.* at 287. In

doing so, the Court relied on *Elliott* as well as *United States v.*

*Biesiadecki*, 933 F.2d 539 (7th Cir. 1991). *Id.*

In *Elliott,* the defendants were charged with mail fraud,

conspiracy, and securities fraud in connection with their sale of real

estate related investment vehicles. The district court excluded the

testimony of Elliott's "satisfied customers" who were expected to testify

that: (1) the defendants had committed no wrongdoing; (2) the

defendants had secured their investments with collateral; (3) the

defendants had told them to testify truthfully before the SEC; and (4)

they had received a portion of their money back upon request. *Elliott*,

62 F.3d at 1307–08. Relying on Fed. R. Evid. 401 and 402, the Eleventh

Circuit held that the district court had properly excluded such

evidence. *Id.* at 1308. The court held that such evidence "is

inconsequential in determining whether [the defendants] made

fraudulent representations to the nineteen victims listed in the

indictment." *Id.* The court emphasized that "the proof of [defendants']

intent to defraud lies in the substance of their misrepresentations, not

in the cumulative impact of those misrepresentations on all of their

customers." *Id.* Any opinion by MDOT as to the quality of their work or

that they were willing to continue working with these defendants is

similarly irrelevant to the defendants' misrepresentations or their

intent to defraud MDOT and USDOT. *See also United States v.*

*Ciccone*, 219 F.3d 1078, 1082 (9th Cir. 2000) (proper to exclude defense

evidence of satisfied charitable donors because the evidence did not

relate to the defendant's intent, but only to opinions of the victims).

In *United States v. Biesiadecki*, 933 F.2d 539 (7th Cir. 1991), the

defendant was charged with wire fraud and other offenses for inducing

investors to engage in commodity futures trading by means of material

misrepresentations and material omissions. At trial, the defendant

sought to introduce testimony from customers that they had heard the

defendant's sales pitch but did not believe that they had been

defrauded. *Id.* at 543. The district court excluded this testimony finding

that whether customers heard the sales pitch and did not feel deceived by the pitch was not relevant. *Id.* at 543–44. The Seventh Circuit affirmed the district court's ruling excluding that testimony holding that "[t]he excluded testimony of the other … customers would have improperly shifted the jury's attention away from the knowledge and intent of Biesiadecki and focused instead on the beliefs of the victims of the alleged scheme to defraud." *Id.* at 544. The Sixth Circuit cited that precise language with approval in *Bravata. Bravata*, 636 F. App'x at 287.

Finally, in *Daniel*, the defendant argued that "though he admittedly intended to deprive [the victim] of money in the short term by taking improper loans, he did so in hopes of benefitting them in the long-term by repaying the loans …" *Daniel*, 329 F.3d at 488. Because he meant the victim no harm, defendant argued, he lacked the requisite intent to commit wire fraud. *Id.* The Sixth Circuit rejected that claim and held that the defendant's argument constituted an improper invitation for the jury to "look beyond his bad conduct to his overall motives." *Id.* Such a focus would misconstrue the critical inquiry—that is, whether the defendant made material misrepresentations. As the

13

Sixth Circuit recognized, "[t]he government had only to establish that [the defendant] intended to deprive [the victim] of money in the short-term, and it presented sufficient evidence for the jury so to find." *Id.*

The rationale from those cases compels the exclusion here as well. That MDOT continued to work with SSI, settled with SSI civilly, and was satisfied with their performance is irrelevant. Moreover, their apparent satisfaction was based on a distorted view of the reality of what the defendants were doing at SSI. MDOT did not have access to much of the evidence the government obtained through the grand jury and search warrants, which includes email conversations between the defendants during the conspiracy and the secret agreements they entered into to hide material facts from MDOT and USDOT. Thus, not only is evidence of  MDOT's settlement and opinions inadmissible, allowing the defendants to introduce them would then open the door to the government showing that MDOT's views were misinformed. Such evidence—and the resulting response—would only serve to confuse the jurors and divert their focus from the elements of the crimes charged. *See* Fed. R. Evid. 403.

14

### C. Reliance and Materiality

It is well settled that the materiality of a falsehood is an element

of wire fraud. Sixth Circuit Pattern Jury Instruction 10.02 for wire

fraud defines "material": "(2)(D) A misrepresentation or concealment is

'material' if it has a natural tendency to influence or is capable of

influencing the decision of a person of ordinary prudence and

comprehension." Pattern Jury Instructions, 245 (Jan. 1, 2024). That is

consistent with the Supreme Court's decision in *Neder v. United*

*States,* 527 U.S. 1, 16, 25 (1999).

The determination of materiality is an entirely objective one. As

the commentary notes: "As to whether the fraud must be capable of

deceiving persons based on a subjective ('however gullible') standard or

an objective ('person of ordinary prudence') standard, case law supports

the objective standard provided in paragraph (2)(D) of the instruction."

Pattern Jury Instructions, 252. *See United States v. Petlechkov*, 922

F.3d 762, 767 (6th Cir. 2019); *United States v. Jamison,* 427 F.3d 394,

415–16 (6th Cir. 2005).

Moreover, proof of actual reliance is not required for the government to establish that a misrepresentation was material. *Daniel*, 329 F.3d at 488.  The question for the jury is what the defendants intended at the time they made the false statements and omitted facts, and whether those false statements and omitted facts were capable of influencing MDOT and USDOT—not what MDOT thought about them and their work. Proof that MDOT or USODT relied on them or were actually influenced is not required. Allowing the introduction of evidence that MDOT was purportedly satisfied with SSI's performance presents a concrete danger of misleading the jury into improperly applying a subjective standard for materiality.

## Conclusion

For these reasons, this Court should bar defendants from eliciting evidence of MDOT's settlement with SSI, MDOT's satisfaction with SSI's work, and MDOT's opinion about the indicted offenses. Moreover,

the Court should further preclude arguments of that nature that may

tend to cause jury nullification at trial.

Respectfully submitted,

JULIE A. BECK
Acting United States Attorney


*s/Karen L. Reynolds*
Karen L. Reynolds
T. Patrick Martin
Assistant United States Attorneys
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
Karen.Reynolds@usdoj.gov
Thomas.Martin@usdoj.gov

Dated:  March 31, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification to all Counsel of record.