UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

D-1 JEFFREY BARTLETT,
D-2 ANDREW SEMENCHUK,
D-3 ADAM BALL,
D-4 BRIAN BARTLETT, and
D-5 ANTHONY THELEN,

       Defendants.
_____/

Case No. 23-CR-20676

Hon. Thomas L. Ludington

**DEFENDANT BALL'S RESPONSE TO
GOVERNMENT'S MOTION IN LIMINE TO BAR EVIDENCE**

**INTRODUCTION**

    The Second Superseding Indictment in the case at bar charges Defendants Jeffrey Bartlett, Brian Bartlett, Andrew Semenchuk, Anthony Thelen, and Adam Ball with conspiracy to commit wire fraud, conspiracy to defraud the United States, and multiple counts of wire fraud. The Defendants deny these allegations.

    This Case centers around disputed fraudulent activities involving Surveying Solutions, Inc. ("SSI"), a surveying company that received highway construction contracts from the Michigan Department of Transportation (MDOT). Many of the contracts were funded in part by the United States Department of Transportation

(USDOT).[1] The Defendants are accused of creating shell companies and falsifying documents to inflate overhead costs and fraudulently obtain reimbursements from MDOT.

On March 31, 2025, the Government filed its Motion in Limine to Bar Evidence (ECF #208), asking this Court to bar the admission of evidence that MDOT was satisfied with the work completed by the Defendants, and to bar evidence of the civil settlement between SSI and MDOT.

As an initial matter, the Defense would argue that the Government's motion is premature and not yet ripe for consideration. Trial is currently scheduled over three months from today, and this Honorable Court should not make a ruling on the admissibility of this evidence this far in advance.

Further, the Government Motion relies on case law that suggests that customer satisfaction with the work completed in the alleged scheme is irrelevant and therefore inadmissible. The Government, however, ignores that this prosecution is expressly based on the government procurement requirements of the Brooks Act, which explicitly makes the quality of a consultant's work relevant. Paragraph 3 of the Indictment expressly alleges as much: "Federal regulations required MDOT to

---

[1] This section of the Brief summarizes the allegations contained in the Government's Second Superseding Indictment. It is not an admission of facts, but rather an acknowledgment that the Court must accept the allegations as true at this point in the proceedings.

2

negotiate engineering and survey contracts with the most qualified firms, and to pay a "fair and reasonable" rate determined by a calculation of direct labor costs and indirect costs, also known as overhead expenses."

Among the law's considerations in choosing the "the most qualified firms" are their "work experience, specialized expertise, professional licensure, staff capabilities, workload capacity, and past performance." Because a consulting firm's "past performance" is one of the express factors required to be considered by a government agency when choosing a consultant pursuant to the Brooks Act, it is directly relevant to a prosecution based on non-compliance with Brooks Act regulations. MDOT could not have entered negotiations regarding a fair and reasonable rate with SSI unless and until it already had determined that SSI was one of the most qualified firms – based in large part on its satisfactory past performance.

Additionally, the cases relied upon by the Government are clearly distinguishable. As more fully explained below, in addition to its relevance under the Brooks Act, MDOT's satisfaction with the quality of the work is admissible on the issue of intent and good faith.

## LAW AND ARGUMENT

**This Evidence Is Relevant and Admissible Under the Federal Rules of Evidence.**

FRE 401 states that evidence is relevant if it has *any* tendency to make a fact

3

more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401(a)(b).

### A. Brooks Act Procurement Contracting.

Procurements for architectural and engineering services in federally-assisted contracts are governed by the Brooks Act, 40 U.S.C. § 1101-1104, *see* Pub. L. No. 107-217, § 1, 116 Stat. 1129 (2002), as implemented by Federal Acquisition Regulation ("FAR") Part 36, and by any relevant agency regulations – in this case the Federal Highway Administration regulations found in Chapter 1 of Title 23 of the Code of Federal Regulations. Surveying is an architectural and engineering service. 40 U.S.C. § 1102(2); 48 C.F.R. § 36.601-4.

The Brooks Act requires that contracting agencies "negotiate contracts for architectural and engineering services on the basis of demonstrated competence and qualification for the type of professional services required and at fair and reasonable prices." 40 U.S.C. § 1101. The awarding of contracts for such service based on competitive low-bids is not permitted. 23 C.F.R. § 172.7(a)(1)(iii)(B) ("Price shall not be used as a factor in the evaluation, ranking, and selection phase").

The determination of "fair and reasonable" compensation is based on a consideration of "the scope, complexity, professional nature, and estimated value of the services to be rendered." 40 U.S.C. § 1104(a). It also is based on the agency's

4

independent estimate of the value of the contract: "The estimate shall be prepared on the basis of a detailed analysis of the required work as though the Government were submitting a proposal." 48 C.F.R. § 36.605. "The independent estimate shall serve as the basis for negotiation." 23 C.F.R. § 172.7(a)(1)(v)(B).

This qualification-based selection process mandated by the Books Act requires a contracting agency head to select, from the firms who have responded to a request for proposals, the three firms "consider[ed] most highly qualified to provide the services required." 40 U.S.C. § 1103(d). The evaluation of which firms are most highly qualified, in turn, rests on specifically identified factors, such as:

(1) Professional qualifications necessary for satisfactory performance of required services;

(2) Specialized experience and technical competence in the type of work required, including, where appropriate, experience in energy conservation, pollution prevention, waste reduction, and the use of recovered materials;

(3) Capacity to accomplish the work in the required time;

(4) Past performance on contracts with Government agencies and private industry in terms of cost control, quality of work, and compliance with performance schedules;

(5) Location in the general geographical area of the project and knowledge of the locality of the project; provided, that application of this criterion leaves an appropriate number of qualified firms, given the nature and size of the project; and

(6) Acceptability under other appropriate evaluation criteria.

48 C.F.R. § 36.602-1. The Federal Highway Administration regulations specifically provide that the:

> [c]riteria used for evaluation, ranking, and selection of consultants to perform engineering and design related services must assess the demonstrated competence and qualifications for the type of professional services solicited. These qualifications-based factors may include, but are not limited to, technical approach (e.g., project understanding, innovative concepts or alternatives, quality control procedures), work experience, specialized expertise, professional licensure, staff capabilities, workload capacity, and past performance.

23 C.F.R. § 172.7(a)(1)(iii)(A).

During the time period at issue in this Case, Surveying Solutions, Inc. (SSI), was on dozens of occasions chosen as the most qualified firm to be considered for advertised prime consultant projects by the Michigan Department of Transportation (MDOT). Being chosen as the most qualified firm resulted in a negotiation with MDOT to arrive at a fair and reasonable cost for the anticipated project. Once a contract price had been negotiated and agreed upon, it could not be changed without new contract negotiations and approvals. 23 C.F.R. § 172.9(e)(1) ("Contract modifications are required for any amendments to the terms of the existing contract that change the cost of the contract").

In short, the legal and regulatory scheme upon which this prosecution rests requires that a government agency choose its consultants on the basis of "demonstrated competence and qualification," and on "past performance on contracts with Government agencies . . . in terms of cost control, quality of work, and compliance

6

with performance schedules." All of that is directly relevant to the charges brought in this prosecution. Without it, the Government would be permitted to mislead the jury by permitting it to believe that these were low-bid contracts, and that SSI and the Defendants did shoddy work for an unreasonable price. Indeed, if there were verse were true and MDOT was not satisfied with SSI's performance, that fact would have been pled in the indictment, and would be a centerpiece of the Government's factual proofs against the defendants. It is difficult to understand how the inverse evidence is irrelevant because does not have "***any*** tendency to make a fact more or less probable than it would be without the evidence."

### B. The evidence the Government seeks to exclude is admissible on the issue of Defendants' intent.

To convict a defendant of wire fraud, the government must show (1) a scheme to defraud; (2) the use of the wires in furtherance of the scheme; and (3) intent to deprive a victim of money or property. *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003). The federal wire fraud statute requires a defendant to deceive the victim in order to obtain money or property, and there is no "defrauding" if there is no intent to harm, even if the transaction would not have occurred otherwise. *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016).

The Government argues in its Motion that admission of evidence bearing on MDOT's satisfaction with the work is inconsistent with case law that holds that

precluding evidence of satisfied investors is inadmissible because the inquiry is not on the victims' state of mind but rather on the defendant's intent. However, the Government is erroneous when it then argues that this evidence is not admissible on the issue of the Defendants' intent in the Present Case.

In support of its argument, the Government cites cases such as *United States v. Elliot* and *United States v. Bravata*; however, each of these cases involved circumstances in which the defendants had elicited investments from customers, took improper loans from customers, or elicited improper charitable donations. The facts in the Case at bar could not be more distinct. Here, it is the negotiated contracts between SSI and MDOT that are the subject matter of the Superseding Indictment. SSI's performance pursuant to those contracts is directly at issue.

In *United States v. Liberto*, 565 F.Supp.3d 739 (D. Md., 2021), the court was faced with allegations that are analytically indistinguishable from those in the Present Case. In *Liberto*, the allegations included:

> that one of the objects of the conspiracy was 'on jobs assigned through the EMCOR-CSC that Sierra self-performed, to overcharge for its services by fraudulently inflating the number of labor hours used to complete the work and by fraudulently marking up the cost of the materials used in completing its assigned work on these jobs. The Amended Superseding Indictment also states that it was a part of the conspiracy "that JOSEPH LIBERTO instructed and caused Sierra PMs to fraudulently inflate the number of hours worked, and the costs of materials used, by both its subcontractors and its own employees ..." Furthermore, of the 31 substantive wire fraud counts, counts 21 and 24 allege that Sierra fraudulently overstated the allowable charge for self-performed work. (cleaned up).

*Id* at 747.

The court held that the defendant's performance under the contract was relevant to defendant's intent:

> The Government conceded on the record at the Motions Hearing that the conspiracy charged does not only relate to Sierra jobs that involved the use of subcontractors. Sierra's contract performance in self-performed jobs is material and probative evidence as to the Defendant's mental state. The evidence the Defendant proposes to offer is therefore not improper character evidence.

*Id.* at 747.

As in *Liberto,* evidence of SSI's performance under the contract is directly relevant to the Defendants' intent and state of mind. The Government's assertion that MDOT's satisfaction with SSI's work was based on a distorted view of SSI's conduct is an argument it is permitted to make, but one that Defendants dispute, and it does not mean that the evidence is irrelevant. And the admission of MDOT's satisfaction with SSI's work will give the jury the full picture needed to come to a reliable verdict.

In *United States v. Boggs*, 737 Fed.Appx. 243 (6th Cir. 2018), the Sixth Circuit upheld the district court's admission of evidence that defendant's nonconforming work under the contract was admissible, holding that it was relevant to demonstrate defendant's intent to defraud. The evidence that was admissible in *Boggs* for the government's purpose of proving intent is simply the other side of the coin. If failure

9

to carry out a contract's requirements is admissible to prove an intent to defraud, then SSI's fully and satisfactory past contract performance in the Present Case is relevant to prove the opposite – lack of intent to defraud.

To exclude evidence that the Defendants seek to admit to rebut the allegations of the intent to defraud would deny Defendants their Sixth Amendment right to present a defense. This evidence is both relevant to the underlying facts of the charges and goes directly to the Defendant's state of mind. This Court should admit this evidence because it directly relevant to the Defendants' intent and state of mind as recognized by the Court in *Liberto*.

The Government finally argues that the evidence of MDOT's satisfaction with SSI's work "is irrelevant to whether the defendants made materially false statements under the wire fraud and criminal conspiracy statutes." [ECF No. 208, PageID.2345] But false statements by themselves, even if true, are insufficient. The intent of the Defendants most certainly is relevant, and the evidence of SSI's past satisfactory performance on MDOT contracts is directly relevant to the Defendant's lack of an intent to defraud.

## **CONCLUSION**

Evidence of Defendants' past performance on consulting contracts with MDOT is directly relevant to understand the nature of the contracting regulations

that the prosecution is based on, to understand why the Defendants were negotiating contracts with MDOT in the first place, and to demonstrate the Defendant's intent and good faith.

WHEREFORE, Defendant asks this Court to deny the Government's Motion, and allow for evidence of MDOT's satisfaction with the work performed by the Defendants on the contracts in contention to be admitted.

Respectfully submitted,

For the Defendant Jeffrey Bartlett:

/s/ Joshua A. Blanchard
Blanchard Law
309 S Lafayette St Ste 208
PO Box 938
Greenville, MI 48838 6l6-773-2945
josh@blanchard.law

For the Defendant Andrew Semenchuck:

/s/ Daniel Gerdts
Daniel L Gerdts, Lawyer
33l Second Avenue South, Ste 705
Minneapolis, MN 5540l
(612) 800-5086
daniel@danielgerdtslaw.com

For the Defendant Adam Ball:

/s/ Mark A. Satawa
Satawa Law, PLLC

26777 Central Park Blvd. Ste 300
Southfield, MI 48076
248-356-8320
mark@satawalaw.com

For the Defendant Brian Bartlett:
/s/ Mark J. Kriger
LaRene & Kriger, PLC
2400 Guardian Building
500 Griswold St.
Detroit, Michigan 48226
(313) 967-0l00
mkriger@sbcglobal.net

/s/ James W. Amberg
Amberg & Amberg
32l2l Woodward Ave. Ste PH
Royal Oak, MI 48073
(248) 68l-6255
Sfish66@aol.com

For the Defendant Anthony Thelen:

/s/ Charles E. Chamberlain, Jr.
Willey & Chamberlain
300 Ottawa Avenue, N.W. Ste 8l0
Grand Rapids, MI 49503
(6l6) 458-22l2
cec@willeychamberlain.com