UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| United States of America, | ) |
|     Plaintiff, | ) Case No. 1:23-Cr-20676 |
| vs. | ) The Honorable Thomas L. Luddington<br>) United States District Court Judge |
| Andrew Semenchuk (D-2), | ) |
|     Defendant. | ) |

SENTENCING MEMORANDUM
AND MOTION FOR VARIANCE

Undersigned counsel respectfully submits this sentencing memorandum on behalf of Defendant Andrew Semenchuk. The memorandum provides appropriate background concerning the history and characteristics of Mr. Semenchuk, the nature of the offense, and a recommendation for a variance from the advisory guideline sentence to a sentence of probation with appropriate conditions.

STATUTORY AUTHORITY

Pursuant to the federal statutory sentencing authority, "in determining the particular sentence to be imposed" a federal sentencing court "shall consider . . . the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need for the sentence imposed" and "the kinds of sentences

available." 18 U.S.C. § 3553(a); *Esteras v. United States*, 145 S. Ct. 2031, 2038 (2025). The sentencing court must also consider the advisory sentencing guidelines.

The kinds of sentences expressly available in this case include "a term of imprisonment, a term of probation, or a fine." *Esteras*, at 2038 (citing 18 U.S.C. § 3551(b)). 18 U.S.C. § 3561(a) specifically authorizes a sentence of probation unless—

> **(1)** the offense is a Class A or Class B felony and the defendant is an individual;
> **(2)** the offense is an offense for which probation has been expressly precluded; or
> **(3)** the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense.

18 U.S.C. § 3561(a). A violation of 18 U.S.C. § 371 – the offense of conviction in this case – is a class D Felony because the maximum term of imprisonment is five years. 18 U.S.C. § 3559(a)(4). Probation is therefore a statutorily authorized sentence in the instant case that the Court must consider at sentencing.

## THE OFFENSE

The offense of conviction is conspiracy to defraud the United States, as set forth in Count 2 of the second superseding indictment. The core conduct that gave rise to the violation can be boiled down to a series of false assertions that the four companies that comprised the SSI Group were not commonly controlled.[1] While the companies were set up on paper to appear to be independent companies conducting business with

---

[1] The charging instrument includes other sundry allegations of misconduct, but this is the core unlawful conduct that defrauded MDOT of money.

each other through arm's length transactions regarding building leases, vehicle and equipment rentals, and data storage, the reality was different. The owners of the companies made business decisions for all the companies through group consensus, and they shared equally in the collective revenue generated by the companies. They had accountants review the collective profits at year's end to ensure that everyone had received an equal share of the profits, and to make "equalization payments" if not.

The arrangement, and the ruse of independent operations, permitted SSI artificially to increase its operating overhead as approved annually by the Michigan Department of Transportation (MDOT) for payment on the contracts it let for surveying consultant work. The increased overhead, in turn, also increased the amount paid as profit on each of the contracts because the "profit" was an added fixed percentage on top of each billing. Because SSI was not truly entitled to the artificially inflated overhead and profits, they were paid more than they were legally entitled to receive. And that is the core of the fraudulent conduct at issue in this case.[2]

---

[2] The ruse also permitted SSI to qualify as a "disadvantaged business enterprise," but the reason that the factual basis underlying the plea to Count 2 makes no mention of SSI's short-lived status as a DBE is because it caused no economic harm to MDOT and the program has since been found to be unconstitutional. USDOT recently revised its rules to end race and sex-based presumptions for disadvantage and now requires applicants to demonstrate social and economic disadvantage on an individual basis. *See* DBE Interim Final Rule, 90 F.R. 47969 (3 October 2025). The change was enacted after several successful constitutional challenges to the program as it existed during the time-period covered by Count 2 of the second superseding indictment.

That fraudulent conduct was nonetheless mitigated in this case by the extraordinary efficiencies brought to the surveying work on MDOT's projects by Mr. Semenchuk. Mr. Semenchuk took a significant risk in his pioneering adoption of mobile LiDAR[3] technology to assist in the surveying and mapping work performed by SSI in its contracts with MDOT. The technology and the instruments required to use it were extremely expensive back in 2012, and still are today. As noted by the letter submitted by his colleague Gordon K. Perry, Mr. Semenchuk carried out the first pilot project in the state of Michigan utilizing the new technology. *See* Addendum at 1. According to the letter submitted by his colleague Brian Fish, Mr. Semenchuk "has been a leader in the use of this technology in Michigan and it has changed the way survey mapping is completed in the field. This technology made it possible to map while driving at highway speeds and keep surveyors safely out of the traveled roadway." Addendum at 4. Mr. Semenchuk convinced his colleagues at SSI that it was worth the risk, and taught people how to use the technology.

LiDAR makes it possible to conduct comprehensive scans of terrain and building projects in a matter of hours instead of days. While highly accurate, traditional topographical land surveying is a time-consuming affair that involves a lot of on-foot

---

[3] LiDAR (Light Detection and Ranging) is a cutting-edge remote sensing technology that uses laser pulses to capture detailed topographic data in 3D. It creates a point cloud, a high-density dataset of geo-referenced coordinates that reflect the physical terrain.

work with line-of-sight measurement tools. A comparative analysis of the methods carried out in 2015 found that under the traditional method surveyors were able to survey a 25-mile area and process the results in about 1,921 hours. Meanwhile, it only took 373 hours to survey a 153-mile area and process the results using topographic LiDAR.

As a consequence, SSI was delivering better quality work than any of its competitors, and for less money – even though they were simultaneously committing fraud by padding the bills submitted to MDOT through the artificially inflated overhead. In 2022, years after the fraud was discovered, the state still wanted to work with them because of the quality and price of the work. According to F.B.I. Special Agent Mitchell L. King, "The posture of MDOT appears to be that SSI is cheap, they are the best at what they do, and there is a lot of work on the horizon." Addendum at 9. In short, while the fraud committed by Mr. Semenchuk certainly merits the instant conviction, the Court should also consider the significant mitigating factor of Mr. Semenchuk's simultaneous contribution to the increased quality and safety, and diminished cost, of highway construction surveying in the state of Michigan.

## HISTORY AND CHARACTERISTICS OF ANDREW SEMENCHUK

Andrew Semenchuk appears to be universally loved and admired by his family, colleagues, and even strangers. He is described as trustworthy, loyal, helpful, friendly, courteous, kind, thrifty, brave, and reverent – and that is by people who are well aware

5

of his involvement and plea of guilty in this case. As a consequence, of course, he is greatly shamed by the stain that the instant case has cast upon his character, and the pain that his conduct has brought to bear on his family.

Mr. Semenchuk was born in the Philippines, but the family immigrated to Michigan during the kleptocracy of Philippine President Ferdinand Marcos. Mr. Semenchuk attended high school and college in Michigan, and went on to become a professional surveyor. He worked for many years at MDOT before leaving to start his work at SSI. He married at 22 years of age, and he and his wife are still together despite the heavy toll of this lengthy investigation and prosecution. He and his wife have been working, saving money, and living frugally since 1994. They built their own house, with their own hands, and have lived in it since 2001.

The move to SSI in 2011, and the work it required, took a big toll on Mr. Semenchuk's well-being. In additional to the very long physical hours, the toll on his mental health was substantial – in no small part because he was not happy with the way the company was run and because of the constant stress caused by the on-going deceits that needed to be kept hidden. It was particularly stressful for Mr. Semenchuk because he was expected to be the person who personally signed off on the documents that maintained the fraud because of his titular position as president of SSI.

Eventually, the personal stress was too much. He worried for the company and its employees. He did not want to be the person supposedly in charge any more. He

eventually decided that he just wanted out – completely out. In July 2018 – a full year before the criminal investigation began in this case – he informed his coconspirators that he was withdrawing from the both the conspiracy and the company, and everything it stood for. A buyout was negotiated, and he transferred his 5200 shares back to SSI, he formally withdrew the company from its DBE status, and he resigned as an officer and director. Indeed, after 8 August 2018, he almost never foot in the company's office. His departure was official in December 2018, but he had checked-out long before. His only remaining tie to the company was as a part-time employee –which was compelled by the restrictions of a non-compete agreement, and eventually because the Government put a freeze on all of his assets.

In short, Mr. Semenchuk is known to be a decent, hard-working man with a good reputation that has now been tarnished by his participation in the SSI Group fraud. True to his character, however, he recognized early on that what he was doing was wrong, and he stopped doing it. His quit on his own accord long before the Government began its investigation and conducted its raid in July of the following year. That mitigating personal characteristic ought to be particularly salient to the sentencing court in this case because it shows that Mr. Semenchuk recognized what was wrong, and ceased participating in it, on his own without the need for judicial intervention.

## OTHER SENTENICNG CONSIDERATIONS
## AND SENTENCING RECOMMENDATION

As of 1 November 2025, the new sentencing guidelines manual no longer requires the Court to consider guidelines departures, but expressly authorizes sentencing courts to consider variances from the guidelines sentencing recommendations when appropriate. Motions for such variances are not required, but Mr. Semenchuk does indeed request such a variance in this case. Our recommendation is for a sentence of probation with appropriate conditions, including home detention if the Court is inclined to impose an incarcerative component to the sentence. The probation department already has visited Mr. Semnchuk's home and has approved it as appropriate for community supervision as well.

The variance here requested is appropriate considering the number of mitigating factors described above regarding both the offense conduct itself and Mr. Semenchuk's early withdrawal from the offense conduct. Likewise, Mr. Semenchuk, his codefendants, and the Government have all worked hard to ascertain an accurate and full accounting of the restitution required to make the victim whole – and Mr. Semenchuk *already* has paid his full share of the restitution required. He also has agreed to pay a very sizeable financial penalty in the form of a forfeiture judgment that also is almost completely paid up and will be in full by the time of sentencing.

Undersigned counsel and Mr. Semenchuk look forward to providing additional support in favor of the requested sentence at the time of sentencing.

Dated: 7 November 2025

Respectfully submitted,

GERDTS LAW, PLLC

*s/ Daniel L. Gerdts*
Daniel L. Gerdts (#207329)(MN)
331 Second Avenue South, Suite 705
Minneapolis, MN 55401
612.800.5086
daniel@danielgerdtslaw.com