UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| United States of America, | Criminal No. 23-cr-20676 |
| | Hon. Thomas L. Ludington |
| Plaintiff, | |
| v. | |
| Jeffrey Bartlett, *et al*, | |
| Defendants. | |

**Joint Submission for Sentencing**

This matter resolved following a lengthy settlement conference on July 11, 2025, wherein the Court encouraged the parties to engage in negotiations to resolve the outstanding issues, including restitution and forfeiture. Following preparation of the presentence reports, at a status conference held on November 12, 2025, the Court asked the parties to provide further information about how restitution was calculated in this case, and how forfeiture was determined. The parties agree that these statements are true and support the restitution and forfeiture recitations in the plea agreements.

**Background**

As the Court is aware, negotiations aimed at resolving this case have been ongoing since well before the Indictment was returned, all of which culminated in a six-hour settlement conference between the parties in July of this year. During that meeting, robust discussions took place about the amount of restitution and forfeiture the defendants would be ordered to pay. Those negotiations produced plea agreements that (1) resolve restitution using a conservative methodology favorable to MDOT and (2) include additional forfeiture amounts as punishment, apart from restitution. Taken together with MDOT's prior civil settlement with SSI and SSI's separate non-prosecution agreement, the result is a comprehensive financial resolution that fully compensates the victim and provides meaningful punitive consequences.

**Basis for Restitution Calculations**

From the beginning of this case, MDOT—through the Office of Commission Audits (OCA), which provides independent audit services to the Michigan State Transportation Commission—developed an estimate of MDOT's overpayments to SSI for 2012–2018 totaling $12,685,799.86. That global estimate pre-dated SSI's civil settlement

and used inputs and accounting assumptions designed—in the Government's view—to accurately state MDOT's loss.

In 2022, SSI entered into a settlement agreement with MDOT in which SSI made restitution for overbilling that occurred beginning August 1, 2016. Under that agreement, SSI paid $3,564,031.54 to MDOT and forewent another $2,321,912.39 in subsequent overhead rate charges which MDOT would have otherwise paid to SSI, resulting in total direct and indirect payments from SSI of $5,885,952.93. As agreed by MDOT, these payments "constitute full payment and restitution for all alleged overbillings by SSI . . . from August 1, 2016 through July 31, 2022." MDOT Settlement Agreement at ¶20. This voluntary, pre-indictment settlement with MDOT materially reduced MDOT's claimed overpayment. Because the charged conduct in the criminal case started in 2011 and effected MDOT billing beginning in 2012, the government asked MDOT to report the amount of restitution still outstanding for the period from January 1, 2012 to July 31, 2016. Based on OCA's calculations the remaining amount was $4,571,800. At the November 12, 2025, status conference an MDOT representative and

3

MDOT's independent counsel agreed that this was the remaining restitution owed to fully remediate any financial harm to MDOT.

The parties acknowledge that had this case gone to trial, or to a contested sentencing hearing, the defense would have presented good-faith, principled objections to MDOT's restitution calculation. These objections were the basis for MDOT's agreement in the 2022 settlement agreement that OCA's calculation was properly reduced. During settlement discussions, the defense made objections to aspects of OCA's approach (e.g., use of billing proxies and assumptions that yield a higher estimate), but—recognizing the Court's preference for finality and the important need to ensure full remediation in the light most favorable to the victim—agreed to adopt OCA's number for purposes of restitution. Consequently, the parties agreed that restitution would total the full amount which the parties and MDOT agree will ensure full remediation of any financial harm.

The methodology OCA used to calculate restitution was based on a combination of revenue reported by SSI and information obtained in the criminal investigation, and broke down overpayments of indirect costs and profits by five categories (Equipment, IT Services, Vehicles, Payroll,

4

and Buildings). According to the defense, contract-level analysis using actual direct-labor and overhead data for the same period calculated excess billings of approximately $1.08 million; the parties nevertheless adopted OCA's $4,571,800 figure to remove any doubt and ensure full remediation. Each defendant has already or will fully satisfy his 20% share ($914,360) by sentencing.

**Basis for Forfeiture Money Judgment Calculations**

In addition to restitution, as part of each Rule 11 Plea Agreement, each defendant agreed to the entry of a forfeiture money judgment against him, in favor of the United States, in the amount of $814,640. representing proceeds obtained by the defendants pursuant to the violation charged in Count 2 of the Second Superseding Indictment. While the United States often uses forfeiture as a tool to obtain restitution for the victim, in this case the parties anticipate that restitution will be fully satisfied directly by the defendants at or prior to sentencing. Accordingly, the amounts to be forfeited from each defendant operate as a punishment alone. *See, e.g., Libretti v. United States*, 516 U.S. 29, 39, 116 S. Ct. 356, 363 (1995) ("Our precedents have

likewise characterized criminal forfeiture as an aspect of punishment imposed following conviction of a substantive criminal offense.").

In light of the full restitution contemplated by the agreement, the remedial steps taken by the defendants, and the requirements of the NPA, the parties agree that the forfeiture judgments constitute a significant and adequate financial penalty. *See* Plea Agreement, ¶8C.

**Non-Prosecution Agreement with SSI**

The United States Attorney's Office for the Eastern District of Michigan has reached a Non-Prosecution Agreement with SSI, based on the allegations in this criminal case. Under that Non-Prosecution Agreement, finalized July 30, 2025, SSI is obligated to pay a penalty of $1,100,000 and will operate under a strict compliance plan for the next few years. To separate itself from indicted shareholders Jeffrey Bartlett, Brian Bartlett, and Anthony Thelen, SSI has agreed that within 120 days of the effective date of the NPA, Jeffrey Bartlett, Brian Bartlett, and Anthony Thelen will place ownership of their respective Company shares into irrevocable trusts (the instruments of which shall remain confidential) that vest independent trustees of the respective trusts with authority to vote the beneficiaries' respective SSI shares,

6

but precludes the trustees from increasing their beneficiaries' percentage of ownership. These measures, together with the financial resolution, ensure ongoing protection of MDOT and the public.

**Total Recovery**

As a result of the restitution and forfeiture agreements in the plea agreements, the MDOT settlement with SSI, and the SSI Non-Prosecution fine provision, the parties estimate total recovery in this case to ultimately be $15,630,943.93 which fully remediates MDOT's loss while imposing additional punitive consequences.

| **Source** | **Vehicle** | **Amount** | **Recipient** |
|---|---|---|---|
| SSI | MDOT Settlement | $5,885,943.93 | MDOT[1] |
| SSI | Non-Prosecution Agreement | $1,100,000 | USA |
| Defendants | Restitution | $4,571,800 | MDOT[1] |
| Defendants | Forfeiture | $4,073,200 | USA |
| **Total** | | **$15,630,943.93** | |

**Conclusion**

---

[1] The restitution amount is the maximum total victim recovery possible at a criminal trial, recognizing that the settlement agreement was a negotiated resolution which embraced a resolution of good-faith disputes regarding calculation of the overpayments discussed above covering the time period beginning in August 2016.

The parties jointly submit that this resolution which was the culmination of many hours of good-faith negotiation reflects conservative assumptions favorable to MDOT, provides for maximum potential victim restitution, ensures additional forfeiture, and provides for robust compliance safeguards moving forward. In short, the victim is fully protected and the public interest is secured.

JEROME F. GORGON, JR.
United States Attorney

s/ Karen L. Reynolds
Karen L. Reynolds P31029
Assistant U. S. Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
313-226-9672
karen.reynolds@usdoj.gov

S/ K. Craig Welkener
K. Craig Welkener DC1033585
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-0248
Kenton.Welkener@usdoj.gov

Dated: November 14, 2025

S/ Charles E. Chamberlain
Charles E. Chamberlain, Jr.
Attorney for Defendant
300 Ottawa Ave, N.W. Ste 810
Grand Rapids, MI 49503
616-458-2212
cec@willeychamberlain.com

Dated:  November 14, 2025

/s/Joshua A. Blanchard (w/ consent)
Attorney for Jeffrey Bartlett
Blanchard Law
309 S. Lafayette St., Ste. 208
Greenville, MI 48838
616-773-2945
josh@blanchard.law

Dated: November 14, 2025

/s/Mark J. Kriger (w/ consent)
Mark J. Kriger
Attorney for Brian Bartlett
LaRene & Kriger PLC
500 Griswold St Ste 2400
Detroit, MI 48226
313-967-0100
mkriger@sbcglobal.net

Dated: November 14, 2025

/s/ Mark Satawa (w/ consent)
Mark Satawa
Attorney for Adam Ball
Satawa Law PLLC
26777 Central Park Blvd Ste 300
Southfield, MI 48076
248-356-8320
mark@satawalaw.com

Dated:  November 14, 2025

/s/ Daniel L. Gerdts (w/ consent)
Daniel L. Gerdts
Attorney for Andrew Semenchuk
331 S. Second Ave Ste. 705
Minneapolis, MN 55401
612-800-5086
daniel@danielgerdtslaw.com

Dated:  November 14, 2025